UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

Kimberly-Clark Worldwide, Inc., and
Kimberly-Clark Global Sales, LLC,

Plaintiffs,  Case No. 10-CV-01118

v.  Judge William C. Griesbach

First Quality Baby Products, LLC,
First Quality Retail Services, LLC, and
First Quality Consumer Products, LLC,

Defendants.

FIRST QUALITY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 11

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. RULE 11 SANCTIONS ARE WARRANTED BECAUSE K-C'S
INFRINGEMENT ALLEGATIONS ARE LEGALLY UNREASONABLE ........ 2

    A. K-C's Opposition Does Not Contest That First Quality's
Inspection Process Is Identical To The Weyenberg Prior
Art That K-C Distinguished .......................................................................... 2

    B. K-C's Proposed Claim Construction of "Substantially Opaque" Is
Objectively Unreasonable .............................................................................. 4

        1. K-C's Arguments Provide No Support For Its Position
That Its Claim Construction Is "Well Founded" ................................ 4

        2. K-C's Proposed Claim Construction That "Substantially Opaque"
Means "Some ... Light Is Allowed To Pass Through" Is Objectively
Unreasonable Because It Is At Odds With the Intrinsic Record ........ 7

    C. K-C Mischaracterizes the Law and the Facts ............................................. 9

        1. K-C's Legal Authority is Inapposite .................................................... 9

        2. K-C Mischaracterizes the Facts Regarding First Quality's
Cooperation In K-C's Investigation of First Quality's
Inspection Process ........................................................................... 11

III. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009)..................................................................................9, 10

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  Case No. SA CV 04-00689 MRP (VBKx), 2007 U.S. Dist LEXIS 34467,
  at *26 (C.D. Cal. Apr. 16, 2007).........................................................................................10

*Medrad, Inc. v. MRI Devices Corp.*,
  401 F.3d 1313 (Fed. Cir. 2005).............................................................................................5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................................... passim

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004)......................................................................................9, 10

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*,
  431 F.2d 539 (5th Cir. 1970) ................................................................................................3

*Terlep v. Brinkmann Corp.*,
  418 F.3d 1379 (Fed. Cir. 2005).............................................................................................6

*Triune Star, Inc. v. Walt Disney Co.*,
  Case No., 07-1256, 2008 U.S. Dist. LEXIS 96136, at *23
  (C.D. Ill., Nov. 24, 2008).....................................................................................................11

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
  375 F.3d 1341 (Fed. Cir. 2004).............................................................................................5

*Vitronics Corp. v. Conceptronic, Inc*,
  90 F.3d 1576 (Fed. Cir. 1996)...............................................................................................5

*White v. Dunbar*,
  119 U.S. 47, 51 (1886)..........................................................................................................3

**RULES**

Rule 11 ..................................................................................................................... passim

## I. INTRODUCTION

K-C and its counsel attempt to avoid Rule 11 sanctions by couching the core issue as a run-of-the-mill claim construction dispute between the parties regarding the meaning of "substantially opaque to visible and/or ultraviolet light." That is not the case.

First, K-C's assertion that First Quality's inspection process infringes the '451 Patent flies in the face of the positions that K-C took to obtain the Patent. K-C does not dispute that First Quality's inspection process is *identical* in all relevant respects to the Weyenberg prior art process over which K-C had to distinguish, in the Specification of the '451 Patent and during prosecution, to get the '451 Patent claims allowed. Both the Weyenberg and First Quality processes transmit sufficient visible light through side panels to permit the capture of an image for inspection. In light of K-C's statements about Weyenberg, it is legally impossible for First Quality's inspection process to meet the "substantially opaque" claim limitation, and K-C's infringement assertion is objectively unreasonable under *any* claim construction.

Second, even if K-C had not distinguished Weyenberg, its patent claim would still be objectively unreasonable. First Quality's system does the exact *opposite* of what the '451 Patent claims. It uses visible light passed through side panels to create an image that is then inspected. K-C is therefore forced to offer a nonsensical claim construction. Significantly, K-C *initially* opines that "substantially opaque" means "largely, but not completely, opaque." (K-C Br. 4). But K-C conspicuously ignores this construction when it discusses its infringement position, arguing instead that the limitation is met if "*some* visible and/or ultraviolet light is allowed to pass through the side panels." (K-C Br. 4, 6) (emphasis added). The altered claim construction that K-C uses for its infringement "analysis" is absurdly broad and objectively unreasonable and contradicts

the intrinsic record. For example, a *transparent* window pane allows *some* (indeed, most) visible light to pass through it. But, using K-C's rationale, it would nevertheless meet the criteria for "substantially opaque." This absurd result illustrates the faulty logic on which K-C's argument is based.

K-C has had numerous opportunities to offer a legally reasonable theory of infringement. It has uniformly failed to do so, making it apparent that it brought this lawsuit to harass First Quality. First Quality should not have to bear the burden of defending this frivolous lawsuit or suffering the marketplace implications of another lawsuit. First Quality respectfully requests that its Motion for Rule 11 sanctions be granted.

## II. RULE 11 SANCTIONS ARE WARRANTED BECAUSE K-C'S INFRINGEMENT ALLEGATIONS ARE LEGALLY UNREASONABLE

### A. K-C's Opposition Does Not Contest That First Quality's Inspection Process Is Identical To The Weyenberg Prior Art That K-C Distinguished

First Quality's Opening Brief demonstrated that:

- The Background of the '451 Patent describes the prior art Weyenberg inspection system, in which visible light passes through the side panels of an article, and a camera positioned on the other side of the panels captures an image for inspection. (*See* First Quality Br. 3; '451 Patent, Col. 1:30-47; Weyenberg Patent, Col. 3:46-56, Col. 6:54 - Col. 7:47, Fig. 3).

- The '451 Patent characterizes the Weyenberg prior art as "not well suited" for inspecting an absorbent article when the side panels are "substantially opaque to visible and/or ultraviolet light." (First Quality Br. 4; '451 Patent, Col. 1:47-57).

- This is because *most* of the visible or ultraviolet light reflects off of the "substantially opaque" side panels rather than passing through them. As a result, only a small amount of visible or ultraviolet light passes through the substantially opaque side panels. This small amount of light is *insufficient* to capture an image of the underlying panel for inspection. ('451 Patent, Col. 1:47:57, Col. 15:1-8)

- To solve this problem in the prior art, the invention of the '451 Patent teaches the use of "infrared radiation" that can pass through side panels that are "substantially opaque to visible and ultraviolet light" and provide an image of the underlying side panel for inspection. (First Quality Br. 4-5; '451 Patent, Col. 14:65-15:8).

- During prosecution, the USPTO rejected the original application claims as anticipated by Weyenberg. In response, K-C amended the claims to add the "substantially opaque to visible and/or ultraviolet light" limitation to every claim, and argued that this distinguished the claims of the '451 Patent from the Weyenberg prior art patent.

- In so doing, K-C cited to the same portion of the '451 Specification discussed above, which states that the inspection system of the prior art Weyenberg Patent is not "well suited" to inspecting components that underlie components that are "substantially opaque to visible and/or ultraviolet light." (First Quality Br. 6-8; DI 17, Solomita Decl., Exs. 3-4)

- Based on K-C's amendment and argument, the USPTO allowed the claims of '451 Patent. (First Quality Br. 9; DI 17, Solomita Decl., Ex. 5).

- The accused First Quality inspection system, like the Weyenberg prior art, uses visible light that passes through the side panels of an article and a camera positioned on the other side of the panels captures an image for inspection. (First Quality Br. 9-10; DI 18, Roth Decl., ¶¶ 5-6; 8-16).

Tellingly, K-C does not dispute any of these points. K-C specifically argued during prosecution that the prior art Weyenberg Patent *did not* meet the "substantially opaque" limitation. It cannot now argue that First Quality's identical inspection process *does* meet the "substantially opaque" limitation. *See Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.,* 431 F.2d 539, 544 (5th Cir. 1970) ("A patent may not, like a 'nose of wax' be twisted one way to avoid anticipation and another to find infringement.") (quoting *White v. Dunbar*, 119 U.S. 47, 51 (1886)). As such, there should be no dispute over claim construction. Whatever the meaning of "substantially opaque to visible and/or ultraviolet light," it cannot be interpreted to encompass an inspection system, like First

Quality's and Weyenberg's, that captures an image for inspection using visible light passed through the side panels.

This conclusion is underscored by the fact that K-C does not even apply its purported claim construction to its infringement charge. K-C originally proposes that "substantially opaque" should be construed to mean that "the side panels are largely, but not completely opaque." (K-C Br. 4). But when it is time to explain how First Quality allegedly infringes, K-C unceremoniously abandons its construction and argues instead that there is infringement because "*some* light passes through its side panels." (*Id.* at 6) (emphasis added). This argument makes no sense. Of course "*some*" light passes through First Quality's side panels. In fact, just like Weyenberg, First Quality's inspection process depends on the fact that sufficient visible light passes through the side panels to create an image for inspection. (K-C Br. 6). *That is why First Quality cannot possibly infringe.* No objectively reasonable observer could conclude that such side panels are "largely opaque" or "substantially opaque" to visible light. If that were the case, First Quality could not capture an image and its inspection system would not work.

**B.    K-C's Proposed Claim Construction of "Substantially Opaque" Is Objectively Unreasonable**

1. <u>K-C's Arguments Provide No Support For Its Position That Its Claim Construction Is "Well Founded"</u>

K-C's specific claim construction of the term "substantially opaque" is flatly inconsistent with the intrinsic record of the '451 Patent.

An objectively reasonable claim construction of "substantially opaque" must take into account the specification of the '451 Patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) (The specification "necessarily" informs the proper

479693.5

4

Case 1:10-cv-01118-WCG    Filed 03/28/11    Page 7 of 16    Document 26

construction of a patent claim.); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1351 (Fed. Cir. 2004) (proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record."); *see also Vitronics Corp. v. Conceptronic, Inc,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.").

Likewise, it is black letter law that an objectively reasonable claim construction must take into account the prosecution history of the '451 Patent, including arguments made to distinguish the claims from the prior art. *Phillips,* 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.")

Tellingly, K-C glosses over the specification and prosecution history in arriving at its construction, and completely ignores the clear and crucial distinctions that it drew between the inspection process of Weyenberg and the invention of the '451 Patent. Instead, K-C only briefly touches on the intrinsic record, making two one-line arguments, which actually highlight K-C's failures to fulfill its Rule 11 responsibilities. (K-C Br. 4-5).

Without actually identifying them, K-C attempts to characterize the '451 Patent's discussion of Weyenberg in the Specification as "general statements" that do not rise to the level of a disavowal of claim scope. (*Id.*). But the Specification clearly describes Weyenberg as "not well suited" for inspecting side panels that are "substantially opaque to visible and/or ultraviolet light." The '451 Patent purports to "solve" this problem by providing a system than can inspect substantially opaque side panels. *See Phillips*, 415 F.3d at 1307 (It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims."); *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1383 (Fed. Cir. 2005) (statements in specification distinguishing invention from prior art relied upon to in arriving at proper claim construction of the term "clear"). K-C does not explain how its construction differentiates the '451 Patent Claims from Weyenberg.

K-C's sole argument concerning the prosecution history is also meritless. K-C argues that the applicant's "silence in response" to the Examiner's statements in the Notice of Allowance "does not constitute a clear and unambiguous disavowal of claim scope." (K-C Br. 5). K-C mischaracterizes First Quality's arguments and the prosecution history. First Quality does not rely on the Examiner's statements in the Notice of Allowance or K-C's *silence* regarding the same. Rather, First Quality relies on K-C's amendment of the claims to add the "substantially opaque" limitation and K-C's *express* admission that this amendment was for the purpose of distinguishing the claims over Weyenberg. K-C's argument ignores: (i) that the claims were rejected in view of Weyenberg; (ii) that K-C amended the claims by adding the "substantially opaque to visible and/or ultraviolet light" limitation to every claim; (iii) that K-C argued that this

distinguished the claims from Weyenberg; and (iv) that these amendments and arguments resulted in an allowance of the claims by the USPTO. As a matter of law, K-C's arguments and amendments preclude a claim construction of "substantially opaque to visible and/or ultraviolet light" that would cover Weyenberg and First Quality's process. *Phillips,* 415 F.3d at 1317. K-C has no rejoinder.

> 2. K-C's Proposed Claim Construction That "Substantially Opaque" Means "Some ... Light Is Allowed To Pass Through" Is Objectively Unreasonable Because It Is At Odds With the Intrinsic Record

Ignoring the intrinsic evidence of the specification and prosecution history, K-C instead bases its claim construction position solely on attorney argument, dictionary definitions (i.e., extrinsic evidence), and word games to arrive at its construction that "substantially opaque" is met if "*some* visible and/or ultraviolet light is allowed to pass through the side panels." (K-C Br. 4) (emphasis added).

As a matter of law, this simply cannot be the case. In the context of the '451 Patent, the term "substantially opaque" may well allow for some small amount of light to be transmitted through the side panels, i.e., it does not require absolute opacity. However, the modifier "substantially" cannot be read as expansively as K-C proposes for at least two reasons.

First, the claim language itself does not support K-C's construction. "Substantially" does not mean "some." Even K-C's own arguments equate "substantially" with "largely" or "mostly." (K-C Br. 4). Relying on a dictionary definition and the construction of the term "substantially" in another case, K-C at first suggests that "substantially opaque" means "largely, but not completely, opaque." But K-C ignores this construction in making its infringement charge and instead urges the

wholly unsupported construction of "*some* visible light and/or ultraviolet light is allowed to pass through the panels." (K-C Br. 4, 6).

Although K-C assures the Court that these formulations describe the same thing, they do not. (*Id.*) The latter formulation — "some" light — is much broader. For example, the window pane mentioned above allows some (indeed most) visible light to pass through it, but it is surely not "substantially opaque." Rather, such a pane would be considered to be substantially *transparent* to visible light, the opposite of substantially *opaque*. Similarly, in the real world, First Quality's side panels permit "some" light to pass through. But a side panel that passes a sufficient amount of visible light to create the image used in the inspection process is just like Weyenberg and cannot, by definition, be "largely but not completely opaque." While K-C provides some extrinsic support for its "largely, but not completely, opaque" construction,[1] it provides no support whatsoever — intrinsic or extrinsic — for the "some light passes through" construction that it actually uses in its infringement charge.

Second, K-C's "some light passes through" construction would completely read-out the "substantially opaque" limitation from the claims. Under K-C's construction of the term "substantially opaque," a side panel will still be "substantially opaque" if *any* amount of light (e.g., a large amount, most or even *all* the light) can pass through it. Thus, as construed by K-C, this limitation would cease to exist, as every side panel would be "substantially opaque." This cannot be correct in view of the Specification and

---

[1] Even this first step reveals flaws in K-C's claim construction approach. The Federal Circuit requires claim construction to be based on the intrinsic record, i.e., the claims, specification, and prosecution history of the '451 Patent. *Phillips* at 1315-17. The Federal Circuit rejected *Texas Digital*'s heavy reliance on a dictionary definition without due deference to the intrinsic record. *See Phillips* at 1320. In addition, the construction of "substantially" in the *LNP Engineering* case has no bearing on the meaning of the term "substantially opaque" in the '451 Patent. That case involved a different patent, a different intrinsic record, and a different technology.

prosecution history. K-C used the term "substantially opaque to visible and/or ultraviolet light" to distinguish the patented inspection system from the prior art Weyenberg inspection process in which sufficient visible or ultraviolet light passes through the panels to provide an image, or even in view of the dictionary definition cited by K-C.

For these reasons, the term "substantially opaque" cannot be construed to encompass the situation where enough visible light is transmitted through the side panels to produce an image for inspection.[2]

Where, as here, K-C's infringement allegations rest upon an objectively unreasonable claim construction, K-C's assertion of the '451 Patent against First Quality's inspection process violates Rule 11. *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368 (Fed. Cir. 2009) (affirming finding of Rule 11 based upon legally baseless construction and assertion of claims against products that could not be reasonably considered to infringe).

### C. K-C Mischaracterizes the Law and the Facts

#### 1. K-C's Legal Authority is Inapposite

Throughout its brief, K-C cites *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), to support its position that Rule 11 sanctions would be inappropriate. (*See, e.g.* K-C Br. 2, 3, 4, 5, 8). *Q-Pharma* is inapposite. There, the patentee asserted a method patent directed to therapeutically treating damaged tissue by administering a topical composition containing CoQ[10]. The asserted claims required "a composition comprising as the principal active ingredient a therapeutically effective

---

[2] K-C incorrectly argues that First Quality equates the term "substantially opaque" with "completely opaque." (K-C Br. 5). As noted above, First Quality recognizes that the term "substantially" may indeed allow for some light to pass through the side panels.

amount of [CoQ[10]]." *Q-Pharma*, 360 F.3d at 1297. Plaintiff interpreted the "principal active ingredient" limitation to mean "any effective therapeutic use of CoQ[10] in a skin lotion" and the term "therapeutically effective amount" to mean "an amount effective to have therapeutic benefit," with no specific minimum amount required. In affirming the District Court's denial of the defendant's Rule 11 Motion, the Federal Circuit found that the patent holder's claim interpretations were not objectively baseless or unreasonable because its "*interpretations* comport with the plain meaning of the claim language and *do not appear to be inconsistent with the patent's written description and prosecution history.*" *Id.* at 1301 (emphasis added).

In this case, the opposite is true. As demonstrated above, K-C's claim interpretation of "substantially opaque" *is* baseless and unreasonable because it is completely at odds with the patent's specification and prosecution history. In fact, K-C ignores this intrinsic evidence altogether. In that regard, the present case is more analogous to *ICU Med.*, 558 F.3d 1368 where the Federal Circuit affirmed Rule 11 sanctions based on the patentee's objectively baseless assertion of claims against "spikeless" medical valves. Although the patent claims required a medical valve with a "spike," the patentee proposed to broadly construe "spike" as "an upward projection." *Id* at 1374. The Court found that the patentee's proposed construction, which "omitted the pointed structure or piercing function that were clearly required by the asserted patents' claims, specification, and drawings," was legally unreasonable in view of the intrinsic record. It affirmed the district court's conclusion that "[t]he 'spike' claims should never have been asserted at all, from an objective standpoint." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, Case No. SA CV 04-00689 MRP (VBKx), 2007 U.S. Dist LEXIS 34467, at

*26 (C.D. Cal. Apr. 16, 2007); *see also Triune Star, Inc. v. Walt Disney Co.*, Case No., 07-1256, 2008 U.S. Dist. LEXIS 96136, at *23 (C.D. Ill., Nov. 24, 2008) (awarding Rule 11 sanctions where plaintiff's proposed constructions "did not pass the red face test" because they would "render [claim limitations] meaningless and fail to address the limitations posed by prior art.").

Here, as in *ICU*, the '451 Patent Claims are objectively unreasonable and never should have been asserted against First Quality's inspection process.

### 2. K-C Mischaracterizes the Facts Regarding First Quality's Cooperation In K-C's Investigation of First Quality's Inspection Process

Perhaps to distract the Court from K-C's own objectively unreasonable claim construction and infringement theory, K-C also asserts that First Quality did not cooperate with K-C's pre-filing investigation. (K-C Br. 7). This is blatantly false. K-C's statement that it "did not have complete information" prior to filing suit is belied by the fact that K-C does not identify any specific information that it allegedly lacked.

First Quality granted K-C complete and unfettered access to its training pant manufacturing lines, including the current inspection processes, on *two* separate occasions. (*See* DI 17, Solomita Decl.., Ex. 9). K-C used its unrestricted access to take hundreds of pictures during each inspection. In fact, K-C expressly acknowledged to First Quality that it had had a full opportunity to inspect its entire training pant line. (*Id.*, Ex. 9 at 3).

In arguing that First Quality was allegedly uncooperative, K-C merely points to First Quality's October 19, 2010 letter, which K-C says "provided no answers to K-C's questions. . . ." (K-C Br. 7 n.1). But K-C fails to mention that First Quality promptly

479693.5

11

supplemented its October 19, 2010 letter with an October 26, 2010 e-mail, and, after a further exchange of correspondence, with a detailed November 23, 2010 letter that specifically answered every one of K-C's questions. (*See* DI 179, Solomita Decl., Ex. 11).

K-C's claim that it "did not have complete information" prior to filing is untenable. K-C had the opportunity to inspect First Quality's complete training pant line, including its inspection system, on multiple occasions and received written responses to all of the written questions that it posed to First Quality. K-C's unsupported claim that it lacked certain unidentified factual information regarding First Quality's process provides no excuse for its objectively unreasonable claim construction and theory of infringement.

### III. CONCLUSION

Both before and after this case was filed, First Quality has spent substantial resources demonstrating to K-C and its counsel that their patent claim is frivolous. It is clear that K-C and its counsel are determined to litigate this case without regard for its merits or lack thereof. First Quality therefore respectfully moves this Court for sanctions under Fed. R. Civ. P. 11, including dismissal of K-C's Complaint, monetary sanctions against K-C and the law firm of Banner & Witcoff, Ltd., and any other relief that the Court deems just and proper.

Date: March 28, 2011                                        Respectfully submitted,

                                                            s/ Michael V. Solomita
                                                            Kenneth P. George
                                                            Ira E. Silfin
                                                            Michael V. Solomita
                                                            Brian A. Comack
                                                            AMSTER ROTHSTEIN &
                                                            EBENSTEIN LLP

479693.5

12

Case 1:10-cv-01118-WCG    Filed 03/28/11    Page 15 of 16    Document 26

90 Park Avenue
New York, NY 10016
Phone: (212) 336-8000
Email: kgeorge@arelaw.com
isilfin@arelaw.com
msolomita@arelaw.com
bcomack@arelaw.com

*and*

Gregory B. Conway
T. Wickham Schmidt
LIEBMANN, CONWAY,
OLEJNICZAK &
JERRY, S.C.
231 South Adams Street
Green Bay, WI 54301
Phone: (920) 437-0476
Email: gbc@lcojlaw.com
tws@lcojlaw.com

*and*

Michael A. Brille
D. Michael Underhill
Eric J. Maurer
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW, 8th Fl.
Washington, DC 20015
Phone: (202) 237-2727
Email: mbrille@bsfllp.com
munderhill@bsfllp.com
emaurer@bsfllp.com
eparke@bsfllp.com

ATTORNEYS FOR
DEFENDANTS/COUNTERCLAIM
PLAINTIFFS FIRST QUALITY BABY
PRODUCTS, LLC, FIRST QUALITY
RETAIL SERVICES, LLC, AND
FIRST QUALITY CONSUMER
PRODUCTS, LLC