UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

Kimberly-Clark Worldwide, Inc., and
Kimberly-Clark Global Sales, LLC,

        Plaintiffs,

   v.

First Quality Baby Products, LLC,
First Quality Retail Services, LLC, and
First Quality Consumer Products, LLC,

        Defendants.

Case No. 10-CV-01118
Case No. 09-CV-00916

Judge William C. Griesbach

**FIRST QUALITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CONSOLIDATE UNDER FED. R. CIV. P. 42(a)**

Pursuant to Fed. R. Civ. P. 42(a), Local Rule 42(a) and the Court's Minute Order (D.I. 27 in Case No. 10-CV-01118 (the "second lawsuit")), First Quality respectfully requests that the Court consolidate the second lawsuit with Case No. 09-CV-00916 (the "first lawsuit"), at least for purposes of expert discovery on damages and trial on liability and damages. In both cases, K-C is suing multiple First Quality entities for alleged patent infringement arising from First Quality's manufacture and sale of refastenable training pants. Consolidation is proper because the resulting benefits far outweigh any potential prejudice to K-C. Consolidating these cases, which have overlapping factual and legal issues, would (1) advance judicial economy and efficiency; (2) prevent K-C from unfairly recovering windfall damages, if—contrary to what First Quality believes the evidence shows—it were to convince a jury that there is infringement; and (3) prevent K-C from impermissibly splitting two claims arising from the same set of facts.

1

Any prejudice that K-C may suffer from consolidation, if any, would be minimal and is a foreseeable result of K-C's strategy in bringing separate patent infringement actions against the same defendants for the same conduct.

## I. Legal Standard Under Fed. R. Civ. P. 42(a)

Under Federal Rule of Civil Procedure Rule 42(a), if multiple actions "before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." In deciding whether to consolidate cases, courts exercise broad discretion and "try to consolidate cases where possible." *SJ Props. Suites, BuyCo, EHF v. Dev. Opportunity Corp.*, Nos. 09-C-0533 & 09-C-0569, 2009 WL 3790009, at *1 (E.D. Wis. Nov. 12, 2009) (citing *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945) (Ex. A). "Consolidation is preferred to avoid unnecessary duplication of efforts in related cases and promote judicial economy and efficiency." *Id.* (citing *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir. 1994)). As discussed below, consolidation is proper here.

## II. Consolidation Would Advance Judicial Economy and Efficiency

Courts routinely grant motions to consolidate cases where the same plaintiff asserts different patents against the same defendant for conduct relating to the same product. *See, e.g.*, *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-514, 2007 WL 2892707, at *4 (D. Del. Sept. 30, 2007) ("The related technologies at issue in these patents, the fact that all claims of infringement are based on the same device, and that both cases involve the same parties lead the court to conclude that judicial resources likely will be conserved by consolidating these two cases.") (Ex. B); *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1064 & 1068 (W.D. Wis. 2008) (consolidating cases "involv[ing] allegations of infringement against the same products . . ." and "many of the same defendants" because "related issues will arise about the

2

workings of defendants' products in both cases, and defenses of invalidity . . . are likely to rest on issues common to both cases"); *3M Co. v. Moldex-Metric, Inc.*, No. 06-4044, 2006 WL 3759758 at *1-2 (D. Minn. Dec. 21, 2006) (unpublished) (Ex. C); *W. States Mach. Co. v. S.S. Hepworth Co.*, 37 F. Supp. 377, 378 (S.D.N.Y. 1941).

    K-C's overlapping claims strongly counsel in favor of consolidation, to conserve the Court's and the parties' time and resources. In both cases, K-C accuses First Quality of infringing various patents by manufacturing and selling refastenable training pants. In the first lawsuit, K-C accuses First Quality's refastenable training pants and associated manufacturing processes of infringing ten patents; in the second lawsuit, K-C accuses the same First Quality manufacturing process of infringing the '451 patent. Indeed, both the '143 patent asserted in the first lawsuit and the '451 patent asserted in the second lawsuit specifically relate to inspecting training pants. They even have two inventors in common. First Quality also expects that, if the two cases go to trial, First Quality will have the same company witnesses explain the relevant manufacturing process and products, and sales and marketing activities. In addition, First Quality expects to use the same damages expert and one or more of the same liability experts in both actions, and assumes that K-C will have similar overlap. For all these reasons, consolidation will advance judicial economy and efficiency. The fact that the actions are at different stages does not suggest that the parties and the Court should undergo the unnecessary burden and expense that necessarily would result from separate trials. *See 3M Co.*, Ex. C, at *2 (consolidating two patent infringement actions even though one asserted product patents and the other a method patent and despite their being at "very different stages"). This is particularly true where the only reason that these actions are at different stages is that K-C elected to bring them at two different times.

**III.     Consolidation Would Prevent Windfall Damages for K-C**

Furthermore, it is not even possible to fairly conduct damages expert discovery or trial of the two cases separately.  For example, K-C seeks a reasonable royalty in both cases.  The framework for a reasonable royalty is a hypothetical negotiation at the time that the alleged infringing conduct began.  *Rite-Hite Corp. v. Kelley Co., Inc*., 56 F.3d 1538, 1554 (Fed. Cir. 1995).  That hypothetical negotiation would have encompassed *all* patents that First Quality allegedly needed to launch its refastenable training pants.  *See Applied Med. Res. Corp. v. United States Surgical Corp.,* 435 F.3d 1356, 1361 (Fed. Cir. 2006) (describing reasonable royalty as amount "person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article . . . .") (alterations in original; citations omitted).  The parties would not have negotiated a license to the ten patents at issue in the first lawsuit and separately but simultaneously negotiated a license to the single patent at issue in the second lawsuit.  It is particularly absurd that the parties would have simultaneously negotiated one license to the '143 inspection patent asserted in the first lawsuit and a separate license to the '451 inspection patent asserted in the second lawsuit.

Moreover, First Quality's alleged need for a license to one patent would have influenced the price to be paid for a license to all of the patents that allegedly relate to the manufacturing of refastenable training pant.  Among other things, First Quality expects that its damages expert will testify, in the expert report and at trial if necessary, that patent licenses are usually cheaper when bought as a package than when bought à la carte, that the payment of a royalty on one patent will necessarily reduce the amount of profits available to pay royalties on other patents, and that a high royalty on certain patents will lead to a higher-priced product and reduced sales, thereby reducing the available profit for royalties on other patents.  *See, e.g.*, *LG Display Co., Ltd. v. AU*

4

*Optronics Corp.*, 722 F. Supp. 2d 466, 473 (D. Del. 2010) (suggesting that "rates paid when a party was actually licensing only individual patents, as opposed to an entire portfolio" are different). If the two cases were to proceed separately and if K-C were to prevail on liability, there is a high likelihood for a windfall to K-C.

In addition to seeking a reasonable royalty, K-C also seeks lost profits. This requested remedy also requires consolidation for expert discovery on damages and for trial on liability and damages. K-C obviously cannot be entitled to recover lost profits in both cases, as it would be doubly compensated. But even if K-C were to recover lost profits in only one case, it would be fully compensated for all damages arising from First Quality's allegedly infringing conduct, and any recovery in the other case, including a reasonable royalty, would be a windfall. *See Crystal Semiconductor Corp. v. Tritech Microelecs., Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001) ("Lost profit damages do not depend on the number of patents infringed by one single product in the present case. The lost profits calculation depends only on market variables."); *cf. SLR Partners, LLC v. B. Braun Med. Inc.*, 09 CV 1145 JM RBB, 2010 WL 330088, at *2 (S.D. Cal. Jan. 20, 2010), *aff'd*, 397 F. App'x 643 (Fed. Cir. 2010) (stating that allowing plaintiff's patent infringement claim to go forward risked giving plaintiff a double recovery) (Ex. D).

IV.   **Consolidation Would Prevent K-C from Impermissibly Splitting Claims Under the Doctrine of *Res Judicata***

Consolidation would also prevent K-C from impermissibly splitting claims in contravention of the doctrine of *res judicata*. *See SLR Partners*, Ex. D, at *2 ("Preventing this strategic splitting of claims—which inefficiently uses the parties' and the court's resources—is an important policy underlying claim preclusion doctrine.") (citing *Carson v. Dep't of Energy*, 398 F.2d 1369, 1375 (Fed. Cir. 2005)). "Whether two claims for infringement constitute the 'same claim' is an issue particular to patent law and thus Federal Circuit law applies." *Roche*

5

*Palo Alto LLC v. Apotex, Inc.,* 531 F.3d 1372, 1379 (Fed. Cir. 2008). Under the Federal Circuit's application of the Restatement (Second) of Judgments, a claim "rests on a particular factual transaction or series thereof on which a suit is brought." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir. 1991). Whether a factual grouping constitutes a transaction is determined "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 478-79 (quoting Restatement (Second) of Judgments, § 24).[1]

All K-C's patent claims in the two lawsuits arise from the same factual transaction or series of transactions and are therefore one claim for *res judicata* purposes. According to K-C, each time that First Quality manufactures or sells a refastenable training pant, it infringes both the '451 patent that is asserted in the second lawsuit and multiple patents in the first lawsuit. The alleged acts of infringement occur at the same time, in the same place, and by the same First Quality process. K-C is strategically and impermissibly attempting to split claims. The facts here are similar to those in *SLR Partners*, Ex. D, at *2, where the Court precluded a patent infringement claim based on a different patent asserted in a second action against the same accused product as the first action. The Court observed that the plaintiff chose, for "strategic reasons," not to assert the patent in the first action, even though it could have. *Id.* The Court explained that the plaintiff "received a settlement that closely followed a jury award [in the prior action] intended to compensate" it for its contribution to the defendant's infringing product. *Id.*

---

[1] Even if regional circuit law applied, the Seventh Circuit has similarly explained that "two claims arising from the same facts are one claim for *res judicata* purposes, and may not be split . . . by making each claim the subject of a separate suit . . . ." *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) (Posner, J.).

6

at *3.[2] As shown in Section III, above, that is precisely the risk here if the cases are not consolidated. Accordingly, the policy against claim-splitting on which the doctrine of *res judicata* is based strongly favors consolidation.

## V. K-C Will Not Suffer Prejudice, and Certainly Not Undue Prejudice, if First Quality's Motion Is Granted

K-C had multiple opportunities to amend its complaint in the first lawsuit—and did so twice—when it could have added the '451 Patent infringement claim that it later brought in the second lawsuit. In fact, K-C first wrote to First Quality about the '451 Patent in 2009. On January 11, 2010, K-C moved for expedited discovery in the first lawsuit on the '451 Patent and others (DI 80). In support of K-C's motion, Mr. Popp submitted a declaration in the first lawsuit in which he opined that First Quality likely infringed the '451 Patent. (DI 82). The Court granted the motion for expedited discovery. (DI 97). Thereafter, taking advantage of the protective order in the first lawsuit—which restricted K-C's use of First Quality's highly confidential materials for that case only— K-C enjoyed complete and unfettered access to First Quality's highly confidential training pant manufacturing lines. It inspected the manufacturing processes on multiple occasions, including the training plant inspection process that is the subject of K-C's infringement allegations in both lawsuits. (*See* DI 17 in the second lawsuit, Solomita Decl., Ex. 9). K-C used its unrestricted access to take hundreds of pictures, and it expressly acknowledged to First Quality that it had had a full opportunity to inspect its entire training pants line. (*Id.*, Ex. 9 at 3).

Purportedly based on its inspections, K-C filed its second amended complaint in the first lawsuit on September 3, 2010, just over three months before it filed the second lawsuit on

---

[2] *SLR Partners* distinguished *Kearns v. GMC*, 94 F.3d 1553 (Fed. Cir. 1996), on the grounds that the *Kearns* plaintiff had not "received an award in the prior lawsuit that compensated them for the value of the patent they were asserting" in the later lawsuit. *SLR Partners*, Ex. D, at *3.

7

December 10, 2010. Even though K-C alleges that its '451 Patent claim also arose out of these inspections, K-C waited until September 30, 2010—more than two months later—to resume its correspondence about the '451 patent. Then, instead of adding its new manufacturing process claim to the first lawsuit—which was the vehicle that K-C exploited in the first instance to gain access to First Quality's plant—K-C commenced a new lawsuit in a transparent attempt to increase First Quality's litigation costs. Any delay that would occur from consolidation is a foreseeable consequence of K-C's tactic.

## CONCLUSION

For the foregoing reasons, First Quality's motion to consolidate the two lawsuits should be granted.

Respectfully submitted,

Dated: March 31, 2011

*s/ Eric J. Maurer*

D. Michael Underhill
Michael A. Brille
Eric J. Maurer
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW, 8th Floor
Washington, DC 20015
Tel.: 202.237.2727
Fax: 202.237.613
underhill@bsfllp.com
mbrille@bsfllp.com
emaurer@bsfllp.com

Kenneth P. George
Ira E. Silfin
Michael V. Solomita
Brian A. Comack
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Phone: 212.336.8000
kgeorge@arelaw.com
msolomita@arelaw.com
bcomack@arelaw.com

Gregory B. Conway
T. Wickham Schmidt
LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.
231 South Adams Street
Green Bay, WI 54301
Phone: (920) 437-0476
gbc@lcojlaw.com
tws@lcojlaw.com

*Attorneys for First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC*