UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, Inc., and,
KIMBERLY-CLARK GLOBAL SALES, LLC,

      Plaintiffs,

v.                                                         Case No. 10-C-1118

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY RETAIL SALES, LLC, and
FIRST QUALITY CONSUMER PRODUCTS, LLC,

      Defendants.

## ORDER DENYING MOTION FOR SANCTIONS

K-C and First Quality are competitors in the disposable training pants market. Both feature disposable training pants with refastenable side-seams, which K-C first developed and mass produced for the retail market. K-C was granted a number of patents that relate to not only the product itself but also the manufacturing process K-C developed in its effort to make the product a commercial success. K-C has commenced two separate actions against First Quality alleging infringement of several of these patents. K-C's most recent action concerns U.S. Patent No. 6,885,451 ("the '451 Patent"), which teaches a system and process for inspecting the engagement seam that is formed when the refastenable training pants are pre-fastened during the manufacturing process. K-C claims that the inspection system used by First Quality in its manufacturing process infringes on K-C's '451 Patent.

The case is now before the Court on First Quality's Rule 11(c) motion for sanctions. Fed. R. Civ. P. 11(c). First Quality argues that K-C's action is frivolous because K-C and its counsel

knew at the time the action was filed that First Quality's process for inspecting its refastenable training pants could not possibly infringe the asserted claims of the '451 Patent. First Quality seeks dismissal of the action and sanctions, including actual costs and attorneys fees. For the reasons set forth herein First Quality's motion will be denied.

Under Fed. R. Civ. P. 11 an attorney presenting a pleading to this Court is required to certify that:

> to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; …. [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

Fed. R. Civ. P. 11(b) (emphasis added). Rule 11 is aimed at curbing baseless filings that abuse the judicial system and burden courts and parties with needless expense and delay. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 397-98 (1990). When deciding Rule 11 motions, this Court applies the law of the Seventh Circuit. *See Antonious v. Spalding & Evenflow Cos.,* 275 F.3d 1066, 1072 (Fed. Cir. 2002) ("We apply the law of the pertinent regional circuit when reviewing the imposition of Rule 11 sanctions."). The Seventh Circuit employs a standard of "objective reasonableness" by considering whether "a reasonable attorney would have or should have known" that his conduct violated Rule 11. *Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir. 1991). The Court has identified four separate criteria or "strands" that are embodied in the rule:

> There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the

2

> modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements.

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). In the context of patent infringement actions, the Federal Circuit has interpreted Rule 11 "to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

Turning to the allegations of the complaint, K-C alleges that it is the owner, assignee and licensee of the '451 Patent. (Compl. ¶ 7.) K-C alleges on information and belief that First Quality has been and continues to infringe on the '451 Patent by making and offering for sale by others a training pant product manufactured by one or more processes that use an inspection system covered by one or more claims of the '451 Patent. (Compl. ¶ 8.) More specifically, K-C alleges, also on information and belief, that First Quality's process inspects the refastenable seams which join the side panels of its training pants to determine whether the panels are properly positioned by irradiating the overlapping engagement of the panels with radiation. The accused system then produces an image from the radiation received from the irradiated panels from which it identifies that position of the underlying edge of one panel and then compares the position with predetermined data to determine whether it is properly positioned. (Compl. ¶¶ 11-15.) Although K-C was allowed several inspections of First Quality manufacturing process over the course of the related litigation, K-C alleges that it was unable to determine certain aspects of the inspection system and First Quality did not respond completely to all of its questions about the system. (Compl. ¶¶ 16-19.) Based on these allegations, K-C alleges that it is entitled to the presumption under 35 U.S.C. § 295

that First Quality is inspecting its training pants according to the process of the '451 Patent. (Compl. ¶ 20.)

First Quality argues that K-C and its counsel violated Rule 11 because they know full well that First Quality's inspection system cannot possibly infringe the claims of the '451 Patent. (First Quality Br. in Supp. of Mot. for Sanctions at 1.) This necessarily follows, First Quality argues, from the fact that the inspection system it uses is identical to the system disclosed in U.S. Patent No. 5,359,525 issued to Steven L. Weyenberg ("the Weyenberg Patent"). The Weyenberg Patent constitutes prior art that K-C expressly cited in its application for the '451 Patent. In fact, First Quality notes that K-C amended its application in order to avoid the Patent Office's initial disallowance of several of the claims of the '451 Patent on the basis of Weyenberg. (Solomita Decl., Ex. 1, Col. 1:31, Exs. 3-6.) Because First Quality uses an inspection system disclosed in prior art of which K-C had full knowledge, First Quality contends that K-C and its attorneys must have known that its complaint alleging infringement was frivolous.

But as K-C pointed out at the hearing on First Quality's motion, the Federal Circuit has made clear that "there is no 'practicing the prior art' defense to literal infringement." *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002); *see also In re Omeprazole Patent Litigation*, 536 F.3d 1361, 1377 (Fed. Cir. 2008) ("It is well established, however, that 'practicing the prior art' is not a defense to infringement."). Of course, if the claim that an accused device is alleged to infringe is taught in the prior art, the claim may be invalid. But that is a different question. "Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused device. Questions of obviousness

in light of the prior art go to validity of the claims, not to whether an accused device infringes." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).

K-C's allegation that First Quality's inspection system literally infringes the '451 Patent is not objectively unreasonable, notwithstanding Weyenberg. Claim 1 of the '451 Patent reads:

> 1. A process of inspecting a composite article having first and second panels in at least partially opposed, overlapping engagement with each other, the first panel having an underlying edge overlapped by at least a portion of the second panel which is substantially opaque to visible and/or ultraviolet light, said process to determine whether the panels of the article are present and/or properly positioned, said process comprising:
>
> > irradiating the overlapping engagement of the panels with radiation;
> >
> > producing an image from radiation received from the irradiated panels;
> >
> > identifying in the image a position of the underlying edge; and
> >
> > comparing the identified position of the underlying edge with a predetermined data to thereby determine whether the underlying edge is present and/or properly positioned in the composite article.

'451 Patent, Col. 23:52 to Col. 24:2.) First Quality's inspection system literally infringes the '451 Patent if its system contains each of the limitations in this claim.

In their briefing, the parties focused primarily on the Claim 1 requirement that the second panel be "substantially opaque to visible and/or ultraviolet light." K-C contends that the phrase "substantially opaque" means "largely, but not completely opaque." First Quality agrees that based on the plain language of the claim, K-C's construction is not unreasonable: "In the context of the '451 Patent, the term 'substantially opaque' may well allow for some small amount of light to be transmitted through the side panels, i.e., it does not require absolute opacity." (First Quality Reply Br. at 7.) First Quality contends, however, that this construction cannot stand in light of the

prosecution history. To understand First Quality's argument, it will be necessary to recount that history.

As noted above, the Patent Office initially disallowed several claims, including what later became Claim 1, of the '451 Patent as anticipated by Weyenberg. Weyenberg disclosed an inspection system that used visible light to determine the position of one or more components of a composite product, such as a disposable diaper. The process used a camera to generate an image showing the position of the component within the composite article, which an analyzer then compared with the ideal positions to determine whether the component was properly positioned. In the initial application for the '451 Patent, Claim 1 did not contain the requirement found in Claim 1 as eventually issued that "the second panel which is substantially opaque to visible and/or ultraviolet light." The applicants added that limitation to overcome the Patent Office's disallowance of the claim based on Weyenberg. The applicants argued that "even though the Weyenberg reference teaches 'establish[ing] the location of at least one edge of at least one of said selected components' (Weyenberg, Claim 1), it fails to teach or suggest that a presence and/or position of a first panel's underlying edge overlapped by at least a portion of a second panel which is substantially opaque to visible and/or ultraviolet light may be identified, as recited in amended claims 1 and 9."

In response to the applicants' argument and amendment of the claims, the Examiner allowed Claims 1 and 9. In so ruling, however, the Examiner specifically stated that he was allowing the Claims because they required the use of infrared radiation to see through the substantially opaque panels:

> Referring to Claim 1, the prior art references, either considered alone or in combination, do not disclose or render obvious the limitations whereby a process for inspecting a composite article having first and second panels in at least partially opposed overlapping engagement with each other, the first panel having an underlying edge overlapped by at least a portion of a second component which is substantially opaque to visible and/or ultraviolet light comprises [sic], said process comprising irradiating the overlapping engagement with infrared radiation, producing an image from infrared radiation received from the irradiated panels, identifying in the image a position of the underlying edge, in combination with the remaining limitations in the claim.

(Solomita Decl., Ex. 5, p. 2.)

Based on this history, First Quality argues that K-C cannot reasonably contend that the term "substantially opaque to visible and/or ultraviolet light" can extend to panels that are not opaque to visible light. Since First Quality's inspection system uses only visible light, First Quality contends that it cannot possible infringe the '451 Patent.

First Quality's challenge to K-C's infringement action is understandable. It appears clear from the statement of allowable subject matter that the Examiner viewed the use of infrared radiation to determine the position of components that underlie substantially opaque materials as original and deserving of patent protection. Indeed, it appears from the Examiner's explanation that he assumed amended Claim 1 was limited to the use of infrared radiation. On the other hand, as both parties apparently concede, Claim 1 of the '451 Patent as amended is not limited to infrared light. The infrared radiation limitation is added as a dependent element in Claim 2. ('451 Patent, Col. 24:3-5.) And the specification makes clear that the term "radiation source," as used in the Patent, "refers to any device capable of emitting radiation in any spectrum, which may or may not include the infrared spectrum." ('451 Patent, Col. 22:35-38.) It is arguable that had the Examiner realized that Claim 1 was not limited to infrared radiation he would not have allowed the Claim.

Viewing Claim 1 absent such limitation, it is questionable whether it is valid. But it is not unreasonable to construe Claim 1, as issued, as covering a system that uses visible light to determine the location of a panel underlying another panel that is not entirely opaque. In fact, it would be unreasonable to construe it otherwise. To construe the term substantially opaque to mean that no light could pass through would be inconsistent with the use of visible or ultraviolet light to determine the position of the underlying panel. If the overlying panel is impervious to visible light, the process taught in Claim 1 could not even function.

Of course, Rule 11 also allows sanctions if K-C knew at the time it filed its lawsuit that the '451 Patent was invalid. *Q-Pharma, Inc.*, 360 F.3d at 1298. But a patent is presumed valid, 35 U.S.C. § 282, and this presumption can be overcome only by clear and convincing evidence to the contrary. *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 637 F.3d 1314, 1320 (Fed. Cir. 2011). Moreover, First Quality conceded at the hearing on its motion that its motion was directed at K-C's infringement allegations, not the validity of the '451 Patent. Finally, K-C also argued at the hearing that Claim 1 of the '451 Patent had additional limitations that are not found in Weyenberg or other prior art. Weyenberg teaches establishing the location of at least one edge of at least one component, whereas the inspection system claimed in the '451 Patent is directed toward the respective positions of two overlapping panels. This appears to be a distinction in the actual use of the invention, however, and not in the process taught by the patent. Nevertheless, Claim 1 is framed in terms of panels and their overlying and underlying edges, and K-C points to this language as a further basis for its good faith belief in the objective reasonableness of its allegations against First Quality.

In sum, while it has serious concerns as to the validity of Claim 1 of the '451 Patent, the Court is not convinced on the record before it that K-C's allegation that First Quality's inspection process infringes Claim 1 is frivolous. First Quality has failed to establish that dismissal of the action and Rule 11(c) sanctions are warranted. K-C's pre-filing investigation and analysis, also a key consideration in deciding such a motion, appears to have been careful and deliberate. K-C waited almost a full year before filing its infringement claim on the '451 Patent, after three separate inspections and a series of email and letter exchanges with First Quality's counsel regarding its concerns. Unfortunately, the parties' efforts to communicate about the matter may have been hampered by their reluctance to disclose their respective positions prematurely. K-C's investigation and analysis, as revealed in the record, do not reflect the kind of recklessness and inattention to detail that Rule 11 is intended to address.

Accordingly, First Quality's motion for sanctions under Rule 11(c) (Dkt. 15) is denied. The order staying discovery in this matter is lifted.

**SO ORDERED** this   22nd   day of June, 2011.

                                                 s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge